RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

<table>
<tr><td>

UNITED STATES OF AMERICA *ex rel.,*
            *Plaintiff-Appellee,*

JACQUELINE KAY POTEET,
            *Relator-Appellant,*

    *v.*

MEDTRONIC, INC. *et al.,*
            *Defendants.*

</td><td>

No. 07-5262

</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-02979—Bernice B. Donald, District Judge.

Argued: June 5, 2008

Decided and Filed: January 14, 2009

Before: DAUGHTREY, CLAY, and McKEAGUE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Andrew R. Carr, Jr., BATEMAN GIBSON, Memphis, Tennessee, for Appellant. Christine N. Kohl, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Andrew R. Carr, Jr., Everett B. Gibson, BATEMAN GIBSON, Memphis, Tennessee, for Appellant. Christine N. Kohl, Douglas N. Letter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

    CLAY, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. McKEAGUE, J. (p. 24), delivered a separate opinion concurring in the result.

---

## OPINION

---

CLAY, Circuit Judge.  In this *qui tam* action, Relator, Jacqueline Kay Poteet ("Poteet"), appeals the district court's dismissal of her complaint, brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. (2000), as jurisdictionally barred by the statute's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A), and first-to-file provision, 31 U.S.C. § 3730(a)(5).  In addition to challenging the district court's application of these jurisdictional bars, Poteet also claims that the district court abused its discretion when it failed to grant her motion for discovery and when it failed to conduct an evidentiary hearing before dismissing her complaint.  For the reasons that follow, we **AFFIRM** the district court's dismissal of Poteet's action.

### I. BACKGROUND

**A. Statutory Framework**

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or] conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(1) & (3).  Violators of the FCA are subject to civil penalties of up to $10,000 as well as double or treble damages.  31 U.S.C. § 3729(a)(7).  To promote enforcement of the statute, Congress has directed that an FCA action may be initiated in one of two ways.  First, the government itself may pursue a civil action against the alleged false claimant.  31 U.S.C. § 3730(a).  Second, as is relevant in this case, a private individual (the relator) may bring a *qui tam*[1] action for alleged FCA violations on behalf of the government.  31 U.S.C. § 3730(b).

Before bringing a *qui tam* suit, a relator must serve the complaint upon the government, and the complaint must remain under seal for at least sixty days.  31 U.S.C.

---

[1] *Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro si ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000); *accord* BLACK'S LAW DICTIONARY 1282 (8th ed. 2004).

§ 3730(b)(2). During this time period, the government may "take over" the action, in which case all future litigation is conducted by the government.    31 U.S.C. § 3730(b)(4)(B). If the government declines to do so, however, the relator may serve the complaint on the defendant and proceed with the litigation at its own direction, with the caveat that the government may later intervene upon a showing of good cause.   31 U.S.C. § 3730(c)(3). As an incentive to bring *qui tam* claims, the FCA awards relators in successful suits a portion—ranging from fifteen to twenty-five percent if the government intervenes, and from twenty-five to thirty percent if it does not—of the proceeds recovered. 31 U.S.C. § 3730(d).

In addition to "encourag[ing] 'whistleblowers to act as private attorneys-general' in bringing suits for the common good," *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005) (quoting *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1041-42 (6th Cir. 1994)), the FCA also seeks "to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." *Id.*; *see also United States ex rel. Grynberg*, 390 F.3d 1276, 1278 (10th Cir. 2004) ("The False Claim Act's *qui tam* provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information."); *United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab., Inc.*, 149 F.3d 227, 233 (3d Cir. 1998) ("Section 3730 attempts to reconcile two conflicting goals, specifically, preventing opportunistic suits, on the one hand, while encouraging citizens to act as whistleblowers, on the other."); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994) (noting that, in drafting the *qui tam* provisions of the FCA, Congress sought to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own"). Thus, the FCA places a number of jurisdictional limitations on *qui tam* actions, two of which are relevant for this appeal. First, the public disclosure provision removes federal jurisdiction from FCA actions "based on the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . or from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4)(A). Second, the first-to-file provision denies standing to certain potential relators by directing that once a *qui tam* action is filed "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. §3730(b)(5). If a relator's complaint fails to comply with either of these jurisdictional provisions, it must be dismissed by the district court. *Walburn*, 431 F.3d at 970.

**B. Factual and Procedural History**

Medtronic, Inc. ("Medtronic"), is a medical technology firm which manufactures and distributes various types of medical equipment and supplies. Medtronic Sofamor Danek USA, Inc. ("MSD"), a subsidiary of Medtronic, is a manufacturer and seller of spinal implants and other surgical devices. Both Medtronic and MSD market their products to healthcare providers throughout the United States. The doctors and hospitals who use Medtronic and MSD products frequently submit claims to the federal government for Medicare and Medicaid reimbursement.

On October 5, 2001, Scott Wiese ("Wiese"), a former Regional Sales Manager for MSD, filed a wrongful termination suit against Medtronic, MSD, and others in superior court in Los Angeles, California. Wiese alleged that he had been fired because he had refused to comply with his supervisors' directives to pay illegal kickbacks and bribes to MSD's physician customers in exchange for their business. To support this claim, his complaint described in detail MSD's alleged practice of providing doctors with extravagant travel arrangements, sham consulting agreements, and company-sponsored "Think Tanks" to ensure their continued use of MSD products.

On September 11, 2002, John Doe ("Doe"),[2] a former MSD attorney, filed a *qui tam* action under the FCA against Medtronic, MSD, and ten named physicians in the United States District Court for the Western District of Tennessee. The complaint

---

[2] The real name of this relator is not publicly available information as the Doe complaint remains under seal.

alleged that MSD had used improper sales and marketing tactics to induce the defendant physicians to use MSD products in violation of the FCA and the federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b(b).[3] In particular, Doe claimed that MSD had provided the physicians with numerous kickbacks—free marketing services, sham consulting, research, and royalty agreements, lavish all-expense-paid trips to vacation resorts, and limousine service to adult entertainment clubs—in exchange for the physicians' continued use of MSD products and their promoting of MSD products among their fellow doctors. According to Doe, "[t]hese improper inducements inherently taint[ed] the claims for payment submitted by providers for MSD products and [thereby] cause[ed] the submission of false claims for payment in violation of the [FCA]." J.A. at 396. In addition to the damages and civil penalties provided by the FCA, Doe also sought relief under state and federal law for Doe's allegedly retaliatory discharge from MSD.

On December 29, 2003, more than a year after the filing of the Doe complaint and two years after the filing of the Wiese complaint, Poteet, a former MSD Senior Manager for Travel Services, filed the instant *qui tam* action against twelve physicians (including two physicians named as defendants in the Doe complaint) and five healthcare providers in the United States District Court for the Western District of Tennessee. Poteet alleged that the named defendants had filed numerous false, fraudulent, and ineligible claims for Medicare and Medicaid reimbursement in violation of the FCA. Specifically, Poteet claimed that MSD had paid the defendant physicians large amounts of money and provided them with lavish travel and recreational opportunities—"upgraded lodging for physicians, dinners, entertainment and activities

---

[3]The Anti-Kickback statute provides that:

Whoever knowingly and willfully solicits or receives [or offers or pays] any remuneration (including any kickback, bribe or rebate) directly, or indirectly, overtly, or covertly, in cash or in kind . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. §§ 1320a-7b(b)(1)(A) & (2)(A).

such as golf, snorkeling, sailing, fishing, shopping trips, horse-back riding, hiking," etc.—in connection with sham consulting contracts and royalty agreements. J.A. at 23. In return, the defendant physicians and hospitals purportedly purchased MSD products for use in their patients' surgeries. Thereafter, according to Poteet, the individual defendants, or their employers, "actually submitted false claims for reimbursement for such devices for which payment was made in whole or in part under a federal healthcare program." J.A. at 23. Poteet contended that these actions violated both the FCA and the Anti-Kickback statute.

In accordance with the FCA's requirements, *see* 31 U.S.C. § 3730(b)(2), Poteet filed her complaint *in camera* to remain under seal for sixty days. During this sixty-day period, Poteet met with attorneys from the United States Attorney's Office for the Western District of Tennessee and the Civil Division of the Department of Justice, as well as officials from the United States Postal Inspector's Office, the Federal Bureau of Investigation, and the Department of Health and Human Services' Office of the Inspector General. At these meetings, Poteet was informed of the existence of the Doe complaint as well as its general allegations and its named defendants. Following these meetings, the government requested and was granted a six month extension of the seal from March 1, 2004, through September 1, 2004, so that it could investigate the case. Thereafter, several additional extensions were granted, with Poteet's approval, as the government continued its investigation, which included numerous additional meetings between Poteet and government officials.

During this investigation period, Poteet amended her complaint three times to include additional defendants. In her third amended complaint, filed on February 10, 2005, Poteet named Medtronic and MSD as defendants along with sixteen physicians and nine healthcare providers. This complaint contained the same allegations of fraud against the government as her prior complaints—sham consulting and royalty agreements between MSD and the defendant healthcare providers, as well as lavish travel provided to individual physicians and their families in return for the use of MSD products—but added some further details. The complaint also was accompanied by a

"Supplement to Third Amended Complaint" in which Poteet alleged new and continuing payments by MSD to physicians to induce them to use and to persuade others to use MSD medical devices. Each of these complaints as well as the supplement were filed under seal as required by the FCA.

The government allowed the seal in Poteet's case to expire on December 20, 2005. On January 13, 2006, the district court denied the government's motion for a further extension of the seal, and the case was subsequently unsealed on January 20, 2006. On January 25, 2006, the district court partially reinstated the seal with respect to all pleadings filed on or prior to January 25, 2006, with the exception of Poteet's complaints, amended complaints, and supplements to complaints. However, the district court directed that all future pleadings be filed without seal.

On July 18, 2006, after completing its investigation into Poteet's allegations, the government filed a motion to dismiss Poteet's complaint, arguing that it was barred by the first-to-file provision and the public disclosure provision of the FCA. In this motion, the government also informed the district court that it recently had entered into a settlement agreement with Medtronic and MSD (the "Settlement Agreement"), under which those firms would pay $40 million to settle claims alleging that they had, between 1998 and 2003, paid illegal kickbacks to physicians to induce them to use certain MSD spinal products.[4] Under the terms of the Settlement Agreement, dismissal of both the Poteet and Doe *qui tam* suits was a condition of the settlement.

On July 31, 2006, Poteet filed her response to the government's motion to dismiss. Shortly thereafter, on August 28, 2006, Poteet filed a "Motion for Production and Discovery," seeking a copy of the already publicly available Settlement Agreement and requesting production of "all correspondence relating thereto, together with such other discovery as may be necessary to determine the exact nature and extent of Poteet's role in bringing the defendants to justice herein." J.A. at 610. Although Poteet claims

---

[4]Pursuant to Department of Justice policy, the Settlement Agreement, with a few minor redactions to account for material still under seal, was immediately made public and posted on the internet. *See* http://www.usdoj.gov/civil/foia/elecread/2006/July/MedtronicJUL2006.pdf (last visited November 24, 2008).

in her brief that her discovery motion "was neither granted nor denied nor otherwise ruled on at any time," Relator Br. at 12, the record clearly reflects that the district court denied this motion on October 5, 2006 because of Poteet's failure to comply with a local court rule requiring consultation with the opposing party before filing a discovery motion.

On January 23, 2007, the district court granted the government's motion to dismiss Poteet's complaint. The district court found that Poteet's complaint was jurisdictionally barred by the first-to-file rule as well as the public disclosure rule, and dismissed the case. This appeal timely followed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal of an FCA case for lack of subject matter jurisdiction. *Walburn*, 431 F.3d at 969; *accord United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir. 1997). Because federal courts are courts of limited jurisdiction, the relator bears the burden of establishing a court's subject matter jurisdiction over her FCA claim. *Walburn*, 431 F.3d at 969; *McKenzie*, 123 F.3d at 938. The basis for jurisdiction must be apparent from the facts existing at the time the complaint is brought. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) ("The jurisdiction of the Court depends upon the state of things at the time of the action brought.").

We review a district court's decisions regarding discovery requests and the conducting of evidentiary hearings for abuse of discretion. *See Popovitch v. Sony Music Entm't, Inc.*, 508 F.3d 348, 360 (6th Cir. 2007); *Ivory v. Jackson*, 509 F.3d 284, 297 (6th Cir. 2007). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)).

## III. DISCUSSION

On appeal, Poteet raises two claims. First, Poteet challenges the district court's dismissal of her complaint as jurisdictionally barred by the FCA's public disclosure rule and first-to-file provision. Second, Poteet contends that the district court abused its discretion when it failed to grant her motion for discovery and when it failed to conduct an evidentiary hearing before dismissing her complaint. We consider each of these arguments in turn.

### A. Dismissal of Poteet's Complaint

Poteet's primary argument on appeal is that the district court erred in finding her *qui tam* action to be jurisdictionally barred by both the FCA's public disclosure rule and its first-to-file provision. On *de novo* review, we find the first-to-file rule technically inapplicable to Poteet's complaint. However, we agree with the district court that Poteet's complaint is jurisdictionally barred by the public disclosure provision, and accordingly affirm the district court's dismissal of Poteet's suit on that basis.

#### 1. Public Disclosure Rule

The FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A), "limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information." *Walburn*, 431 F.3d at 973; *see also Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1405-06 (2007). Specifically, § 3730(e)(4)(A) provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). Section 3730(e)(4)(B) defines "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government

before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

To determine whether § 3730(e)(4)(A)'s jurisdictional bar applies, a court must consider "first whether there has been any public disclosure of fraud, and second whether the allegations in the instant case are 'based upon' the previously disclosed fraud." *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005); *accord United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 645 (6th Cir. 2003) (hereinafter "*Bledsoe I*"); *see also Walburn*, 431 F.3d at 974 ("In determining whether the jurisdictional bar of § 3730(e)(4) applies to a relator's case, we consider: '(A) whether there has been a public disclosure; (B) of the allegations or transactions that form the basis of the relator's complaint; and (C) whether the relator's action is "based upon" the publicly disclosed allegations or transactions.'" (quoting *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998))). "If the answer is 'no' to [either] of these questions, the inquiry ends, and the *qui tam* action may proceed; however, if the answer to each of the above questions is 'yes,' then we must determine whether the relator nonetheless qualifies as an 'original source' under § 3730(e)(4)(B), in which case the suit may proceed." *Walburn*, 431 F.3d at 974; *accord Jones*, 160 F.3d at 330.

### a. Public Disclosure of Fraud

For a relator's *qui tam* action to be barred by a prior "public disclosure" of the underlying fraud, the disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by the relator. *See* 31 U.S.C. § 3730(e)(4)(A); *United States ex rel. Burns v. A.D. Roe Company, Inc.*, 186 F.3d 717, 723 (6th Cir. 1999). With respect to this first element, the FCA clarifies that a prior disclosure of fraud is public if it appears in "the news media" or is made "in a criminal, civil, or administrative hearing, [or] in a congressional, administrative, or Government Accounting Office report, audit, or investigation." 31 U.S.C. § 3730(e)(4)(A). "'Public disclosure' also includes documents that have been filed with a court, such as discovery

documents, and a plaintiff's complaint." *McKenzie*, 123 F.3d at 939; *accord Bledsoe I*, 342 F.3d at 645; *Burns*, 186 F.3d at 725; *Jones*, 160 F.3d at 331.

As for the second element, we have held that a public disclosure reveals fraud if "the information is sufficient to put the government on notice of the likelihood of related fraudulent activity." *Gilligan*, 403 F.3d at 386; *see Walburn*, 431 F.3d at 975 ("'[T]he 'allegations and transactions' forming the basis of a *qui tam* have been disclosed 'when enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud.'" (quoting *Jones*, 160 F.3d at 331)); *Dingle v. BioPort Corp.*, 388 F.3d 209, 214 (6th Cir. 2004) ("All that is required is that public disclosures put the government on notice to the possibility of fraud."). To qualify as a public disclosure of fraud, the disclosure is not required to use the word "fraud" or provide a specific allegation of fraud. *See Gilligan*, 403 F.3d at 390; *Dingle*, 388 F.3d at 214 ("The words fraud or allegation need not appear in the disclosure for it to qualify."); *Burns*, 186 F.3d at 724 ("[P]ublicly disclosed documents need not use the word 'fraud,' but need merely to disclose information which creates 'an inference of impropriety.'" (quoting *Jones*, 160 F.3d at 332)). Moreover, the information suggesting fraud need not even come from the same source as long as the different sources "together provide information that leads to a conclusion of fraud." *Gilligan*, 403 F.3d at 390; *see also Dingle*, 388 F.3d at 214 ("The fact that the information comes from different disclosures is irrelevant.").

Following the lead of our sister circuits, we generally have found two types of disclosures sufficient to put the government on notice of fraud. *See, e.g.*, *Dingle*, 388 F.3d at 212 ("Either a public disclosure which includes an allegation of fraud, or a public disclosure that describes a transaction that includes both the state of the facts as they are plus the misrepresented state of facts must be present to eliminate jurisdiction in a case."). "First, if the information about both a false state of facts and the true state of facts has been disclosed, we [will] find that there has been an adequate public disclosure because fraud is implied." *Gilligan*, 403 F.3d at 389; *accord Walburn*, 431 F.3d at 975 ("When the 'misrepresented state of facts and a true state of facts' have been disclosed,

there is enough information in the public domain to give rise to 'an inference of impropriety.'" (quoting *Jones*, 160 F.3d at 332)); *see also Jones*, 160 F.3d at 331 (adopting the X + Y = Z analysis from the D.C. Circuit's decision in *United States ex rel Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994)).[5] Second, if there has been a direct allegation of fraud, we will find a public disclosure because such an allegation, regardless of its specificity, is sufficient to put the government on notice of the potential existence of fraud. *Gilligan*, 403 F.3d at 389; *see also Dingle*, 388 F.3d at 215.

In the instant case, we find the Wiese complaint sufficient to qualify as a public disclosure of fraud which could potentially bar Poteet's *qui tam* complaint.[6] First, as a filing in a California civil action, the Wiese complaint clearly was a "public" disclosure. *See, e.g., McKenzie*, 123 F.3d at 939; *Bledsoe I*, 342 F.3d at 645 ("There is little doubt that [a] complaint, filed in Tennessee state court, qualifies as a public disclosure."). Moreover, the allegations contained in the Wiese complaint were sufficient to put to the government on notice of potential fraud by MSD and its physician customers. In his complaint, Wiese alleged that he had been terminated because he had "refused his

---

[5] In *Springfield*, the D.C. Circuit used the following mathematical illustration to demonstrate what information must be publicly disclosed in order for the government to be put on notice of fraud:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose a fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed.

> * * *

> [Q]*ui tam* actions are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z). When either of these conditions is satisfied, the government itself presumably can bring an action under the FCA and there is no place in the enforcement scheme for *qui tam* suits.

*Springfield*, 14 F.3d at 654.

[6] In addition to the Wiese complaint, the government suggests that two other "public disclosures" bar Poteet's complaint: (1) Medtronic's 10-Q reports filed with the Securities and Exchange Commission ("SEC"); and (2) numerous media reports about the government's investigation of the Doe complaint. We do not find these sources sufficient to qualify as public disclosures *of fraud*. As the district court aptly noted, these SEC filings and news reports "consist of little more than headlines announcing that someone was alleging illegal kickbacks to doctors by MSD." J.A. at 632. Such rumors of reported fraud are not the kind of "allegations or transactions" which the FCA requires in order for a public disclosure to bar jurisdiction. 31 U.S.C. § 3730(e)(4)(A); *see Burns*, 186 F.3d at 724.

supervisors [sic] directives to pay illegal kickbacks and bribes to [MSD's] customers in exchange for business." J.A. at 386. Wiese explained that these illegal payments took the form of "hunting and/or fishing trips" and other "extravagant trips for doctors and their families" which would be disguised as "Think Tanks." J.A. at 380-81. Wiese claimed that, while these "Think Tanks" were "touted as a way to brainstorm among doctors and other professionals in the medical device industry regarding current trends and technology," in reality, they "were nothing more than additional perks offered to doctors in exchange for their business." J.A. at 381. Wiese further described how MSD made "illegal payments to doctors in the guise of 'consulting contracts,'" under which doctors would perform "little work." J.A. at 382. In short, Wiese provided a detailed description of how MSD and its physician customers were covertly violating the Anti-Kickback statute. While Wiese did not directly allege that the doctors accepting kickbacks from MSD submitted fraudulent reimbursement claims to the federal government, his description of the manner in which these doctors and MSD were attempting to disguise these illegal kickbacks as legitimate business activities strongly suggested that these physicians were not disclosing such information—which would have disqualified them from receiving Medicare or Medicaid reimbursement—when submitting insurance claims to the government. The Wiese complaint "presented enough facts to create an inference of wrongdoing," *Jones*, 160 F.3d at 332, and thereby was sufficient to "put the government on notice of the 'possibility of fraud.'" *Gilligan*, 403 F.3d at 390.

### b. *Qui Tam* Complaint "Based Upon" Disclosed Fraud

After finding a public disclosure of fraud, the next step in the public disclosure analysis is to determine whether the relator's *qui tam* complaint is "based upon" this disclosed fraud. *See* 31 U.S.C. § 3730(e)(4)(A); *Gilligan*, 403 F.3d at 391. We have held that a complaint is "based upon" a public disclosure when it is "supported by" the previously disclosed information. *McKenzie*, 123 F.3d at 940; *accord Walburn*, 431 F.3d; *Gilligan*, 403 F.3d at 391; *Jones*, 160 F.3d at 332. Thus, to determine "whether an action is 'based upon' a public disclosure, a court should look to whether substantial

identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint." *Jones*, 160 F.3d at 332; *accord Burns*, 186 F.3d at 725; *see also United States ex rel. Booth v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007) ("Not a single circuit has held that a *complete* identity of allegations, even as to time, place, and manner is required to implicate the public disclosure bar; rather all have held, at a minimum, that dismissal is warranted where the plaintiff seeks to pursue a claim, the essence of which is 'derived from' a prior public disclosure."). Any "action based *even partly* upon public disclosures" will be jurisdictionally barred. *McKenzie*, 123 F.3d at 940 (emphasis added); *accord Walburn*, 431 F.3d at 975 ("[O]ur broad construction of the public disclosure bar . . . precludes individuals who base *any part* of their allegations on publicly disclosed information from bringing a later *qui tam* action."); *Bledsoe I*, 342 F.3d at 646 ("[A] person who bases any part of an FCA claim on publicly disclosed information is effectively precluded from asserting that claim in a *qui tam* suit.").

In the instant case, we find that Poteet's *qui tam* complaint is "based upon" the information contained in the Wiese complaint. Despite the presence of one major allegation that was not made in the Wiese complaint—namely, Poteet's claim that the named defendants had filed false claims for Medicare and Medicaid reimbursement in violation of the FCA—the primary focus of Poteet's complaint is the same MSD illegal kickback scheme which Wiese described in his complaint. Moreover, even though the particular details concerning the kickbacks paid and the defendants involved are slightly different, the illegal kickback scheme described in Poteet's complaint is essentially the same as the scheme alleged by Wiese in his complaint. Like Wiese, who claimed that doctors named in his complaint received illegal compensation from MSD in the form of "hunting and/or fishing trips" and other "extravagant trips for doctors and their families" which were disguised as "Think Tanks," J.A. at 380-81, Poteet contends that the doctors named in her complaint were rewarded for their use of MSD products with "discounted and upgraded [travel] lodgings[,] dinners, entertainment and activities such as golf, snorkeling, sailing, fishing, shopping trips, horse-back riding, hiking and other such activities, all of which were paid by MSD." J.A. at 140. Similarly, Poteet's claim that MSD provided this unlawful compensation during physician "training and education"

meetings and in the form of sham "consulting contracts," J.A. at 136-37, seems to mirror Wiese's allegations that MSD presented some of its illegal kickbacks during "Think Tanks" and disguised others as "consulting contracts." J.A. at 381-82.

In short, while Poteet's complaint presents new details concerning MSD's illegal kickback scheme and describes its operation in relation to different doctors, her allegations bear a substantial likeness to Wiese's prior and publicly disclosed allegations, and consequently are "based upon" the Wiese complaint.[7] *See Jones*, 160 F.3d at 332. Thus, absent a showing that Poteet is an "original source" of the information contained in her complaint, her *qui tam* action is jurisdictionally barred by the FCA's public disclosure provision. *See* 31 U.S.C. § 3730(e)(4)(A).

### c. Original Source

Under the FCA, an original source is "an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based upon the information." *Jones*, 160 F.3d at 333 (citing 31 U.S.C. § 3730(e)(4)(B)); *see generally Rockwell*, 127 S. Ct. at 1407-09. With respect to this second element, we have clarified that "[i]n addition to the requirement that a relator must have provided information to the government prior to filing her FCA suit, . . . a relator must also provide the government with the information upon which the allegations are based prior to any public disclosure." *Jones*, 160 F.3d at 333-34 (citing *McKenzie*, 123 F.3d at 942).

Poteet wisely does not contend that she qualifies as an original source. While Poteet, due to her former position as MSD's Senior Manager for Travel Services,

---

[7] Poteet suggests in her brief that, even if her other allegations are based on the Wiese complaint, the allegations made in the supplement to her third amended complaint cannot be based upon the Wiese complaint since they describe how MSD has changed the way in which it currently disguises its kickbacks to physicians in response to the federal authorities' discovery of the fraud alleged in the Wiese complaint. We find this contention to be without merit. Under our jurisprudence, a relator's entire complaint will be jurisdictionally barred if it is "based *even partly* upon public disclosures." *McKenzie*, 123 F.3d at 940 (emphasis added). Because at least some parts of Poteet's complaint are clearly "based upon" the Wiese complaint, Poteet's whole complaint is jurisdictionally barred unless she can show that she is an "original source."

arguably has direct and independent knowledge of most of the facts alleged in her complaint, she undisputedly failed to provide this information to the government before filing her complaint and before the filing of the Wiese complaint. Thus, she cannot qualify as an original source under the FCA.

Accordingly, we conclude that Poteet's *qui tam* complaint is jurisdictionally barred by the FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A). As this public disclosure rule provides a sufficient basis for dismissing Poteet's complaint, we need not consider whether Poteet's complaint is also barred by the FCA's first-to-file rule, 31 U.S.C. § 3730(b)(5). However, in order to provide clarity to district courts regarding the proper application of the first-to-file rule, we find it appropriate to explain why the first-to-file rule does not technically preclude jurisdiction in this case. It is to this explanation that we now turn.

### 2. First-to-File Rule

The FCA's first-to-file rule provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). By its own terms, this statutory provision "unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts." *Walburn*, 431 F.3d at 971 (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001)). In other words, for a *qui tam* relator to have standing to bring her claim, she "must be a true 'whistleblower'" and will be "precluded from collecting a bounty . . . if someone else has filed the claim first." *Taxpayers Against Fraud*, 41 F.3d at 1035. This "jurisdictional limit on the courts' power to hear certain duplicative *qui tam* suits," *Grynberg*, 390 F.3d at 1278, furthers the policies animating the FCA by ensuring that the government has notice of the essential facts of an allegedly fraudulent scheme while, at the same time, preventing "opportunistic plaintiffs from bringing parasitic lawsuits." *Walburn*, 431 F.3d at 970; *see also Grynberg*, 390 F.3d at 1279 ("Once the government is put on notice of its potential fraud claim, the purpose behind allowing *qui tam* litigation is satisfied.");

*LaCorte*, 149 F.3d at 234 ("[D]uplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.").

In order to determine whether a relator's complaint runs afoul of the § 3730(b)(5)'s first-to-file bar, a court must compare the relator's complaint with the allegedly first-filed complaint. *Walburn*, 431 F.3d at 971. If both complaints "allege 'all the essential facts' of the underlying fraud, the earlier filed [] action bars [the later] action, even if [the later] complaint 'incorporates somewhat different details.'" *Id.* (quoting *LaCorte*, 149 F.3d at 232-33); *accord United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003) (holding that "§3730(b)(5) bars any action incorporating the same material elements of fraud as an action filed earlier"). The later complaint "need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar." *LaCorte*, 149 F.3d at 232; *accord Grynberg*, 390 F.3d at 1279 (The "first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts."); *Hampton*, 318 F.3d at 218 (rejecting "another possible test" which would only "bar[] claims based on 'identical facts'"); *Lujan*, 243 F.3d at 1183 (holding that "a 'material facts,' not 'identical facts,' test should be used to determine if a 'related action [is] based on the facts underlying the pending action'"). "Rather, so long as a subsequent complaint raises the same or a related claim based in a significant measure on the core fact or general conduct relied upon in the first *qui tam* action, § 3730(b)(5)'s first-to-file bar applies." *Grynberg*, 390 F.3d at 1279.

One important caveat to this first-to-file rule, however, is that, in order to preclude later-filed *qui tam* actions, the allegedly first-filed *qui tam* complaint must not itself be jurisdictionally or otherwise barred. *See Walburn*, 431 F.3d at 972 (finding that an earlier filed complaint's failure to comply with Rule 9(b) rendered it legally infirm from its inception, and thus unable to preempt a later-filed action); *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 825 (9th Cir. 2005) (holding that "the first-to-file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint that fulfills the

jurisdictional prerequisites of § 3730(e)(4)"). Indeed, if the first complaint is either jurisdictionally precluded, *see* 31 U.S.C. § 3730(e), or legally incapable of serving as a complaint, *see* Fed. R. Civ. P. 9(b); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (hereinafter "*Bledsoe II*"), then it does not properly qualify as a "pending action" brought under the FCA. 31 U.S.C. § 3730(b)(5). However, if the first-filed *qui tam* action has been dismissed on its merits or on some other grounds not related to its viability as a federal action, it can still preclude a later-filed, but possibly more meritorious, *qui tam* complaint under the first-to-file rule. *See Lujan*, 243 F.3d at 1188.

In the instant case, we find that Poteet's complaint is sufficiently similar to the Doe complaint as to generally preclude jurisdiction under the first-to-file rule. However, because the Doe complaint, like the Poteet complaint, is jurisdictionally barred by the public disclosure provision, the Doe complaint does not technically preclude the filing of Poteet's complaint under the first-to-file rule.

A comparison of the Doe and Poteet complaints reveals that they allege the same essential facts regarding the fraud against the government committed by MSD and its physician customers. While Poteet's complaint contains different (and, indeed, not as extensive) details, both complaints allege that MSD violated the FCA and the Anti-Kickback statute by providing monetary and in kind compensation to physicians as an inducement to use MSD surgical products. Both Doe and Poteet indicate that these kickbacks took the form of lavish trips to desirable locations, sham consulting agreements, and sham royalty arrangements. Likewise, both complaints identify the FCA violation as involving false or ineligible claims for Medicare and Medicaid reimbursement.

The only potentially significant differences between the two complaints is that, with the exception of two overlapping physician defendants and Medtronic and MSD, the complaints identify different physician defendants. However, because the purpose of the FCA's first-to-file provision is to prevent the filing of more *qui tam* suits once the government already has been made aware of the potential fraud perpetrated against it,

*see Walburn*, 431 F.3d at 970; *Grynberg*, 390 F.3d at 1279, the fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme. *See Hampton*, 318 F.3d at 218 (finding that differences in named defendants "are not differences in the material elements of the fraud"). Similarly, the fact that the allegations in the Poteet and Doe complaints may cover somewhat different time periods is irrelevant because they both allege the same type of fraudulent activity by the same general group of actors. *See, e.g., United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp.2d 8, 13 (D.D.C. 2003) ("If the later-filed complaint alleges the same type of wrongdoing as the first, and the first adequately alleges a broad scheme encompassing the time and location of the later filed, the fact that the later complaint describes a different time period or geographic location that could theoretically lead to a separate recovery does not save it from the absolute first-to-file bar of § 3730(b)(5)."). Indeed, "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds," and the rationale behind allowing private plaintiffs to bring *qui tam* suits is fulfilled. *LaCorte*, 149 F.3d at 234.

In light of the substantial similarity between Poteet's *qui tam* complaint and the Doe *qui tam* complaint, the first-to-file rule generally would apply to bar Poteet's complaint. However, as noted above, Doe's earlier-filed action cannot bar a later-filed action under the first-to-file rule if the Doe action is itself jurisdictionally barred, *see Campbell*, 421 F.3d at 825, or has failed to comply with the special pleading requirements of Rule 9(b). *See Walburn*, 431 F.3d at 972. While the Doe complaint is not deficient under Rule 9(b), it is jurisdictionally barred by the FCA's public disclosure provision.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In general, "[a] complaint is sufficient under Rule 9(b) if it alleges 'the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud," and enables defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *Bledsoe II*, 501 F.3d at 509 (quoting *Bledsoe I*, 342 F.3d at 643). In the particular context of FCA *qui tam* complaints, this rule requires a relator to "alleg[e] which specific false claims constitute a violation of the FCA." *Id.* at 505. In other words, "pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation." *Id.* at 504.

In the instant case, Doe's complaint specifically identifies the false claims submitted to the government in violation of the FCA as "all claims for payment related to [MSD] products . . . associated with physicians that were receiving remuneration as described" in the complaint. J.A. at 415-16. The Doe complaint also outlines in great detail the overall fraudulent scheme and identifies the particular doctors and healthcare providers involved in it. These detailed allegations are more than sufficient to enable the named defendants to prepare a responsive pleading to the charges presented. The Doe complaint thus satisfies the pleading requirements of Rule 9(b).

Nevertheless, we note that the Doe complaint appears to be jurisdictionally barred by the FCA's public disclosure rule. In the same way that Poteet's complaint is supported by prior public disclosures, the Doe complaint also is "based upon" the publicly available Wiese complaint. Indeed, similar to Poteet's complaint, the primary focus of the Doe complaint is the same illegal kickback scheme described in detail in the Wiese complaint. While Doe does provide significant additional details regarding MSD's monetary and in-kind payments to physicians, many of Doe's allegations, like those in Poteet's complaint, are substantially similar to the allegations in the Wiese complaint. In short, the Doe complaint, just like Poteet's complaint, is "based upon" the public disclosures in the Wiese complaint. Moreover, the record indicates that it is unlikely that Doe can qualify as an "original source," because the record suggests that Doe never shared his information about Medtronic and MSD with the government prior to filing his *qui tam* complaint. Accordingly, we conclude that, despite the fact that the Doe complaint and Poteet complaint allege all of the same essential facts concerning the

fraud against the government, the Doe complaint technically cannot bar Poteet's complaint under the first-to-file rule.

## B. Denial of Poteet's Requests for Discovery and an Evidentiary Hearing

In addition to challenging the district court's dismissal of her complaint pursuant to the FCA's first-to-file and public disclosure provisions, Poteet contends that the district court abused its discretion by not granting her discovery request and by failing to conduct an evidentiary hearing prior to ruling on the government's motion to dismiss her claims. In particular, Poteet argues that her discovery request should have been granted so that the court could "obtain factual information necessary in order to resolve the dispute."[8] Relator Br. at 17. Poteet further maintains that she was statutorily entitled to an evidentiary hearing under 31 U.S.C. § 3730(c)(2)(A). We find both of these arguments to be completely without merit, and possibly frivolous.

The district court denied Poteet's discovery request because Poteet failed to comply with Local Rule 7.2(a)(1)(B), which required Poteet to first seek production of the documents requested from the government before filing the motion. Poteet undisputedly failed to comply with this rule. Indeed, had she attempted to comply with the rule, the government likely would have informed her that no discovery request was needed as the Settlement Agreement was publicly available online. Thus, the district court's denial of Poteet's discovery request on such grounds cannot be deemed an abuse of discretion.

Moreover, contrary to Poteet's suggestion, she was not entitled to any discovery prior to the district court's ruling on the government's motion to dismiss the complaint for lack of jurisdiction. As noted above, the basis for a federal court's subject matter jurisdiction over an action must be apparent from the facts existing at the time the complaint is brought. *See Citizens for a Better Env't*, 523 U.S. at 94; *Smith*, 354 U.S. at 93 n.1. In determining whether the facts supported jurisdiction over Poteet's action,

---

[8] In making this argument, Poteet repeats her factually erroneous claim that the district court "never ruled" on her motion for discovery and production of documents. Relator Br. at 18.

the district court did not need any evidence that was not already present in the record. To determine whether the public disclosure provision barred jurisdiction, the district court needed only to compare Poteet's complaint to the allegedly publicly disclosed materials, including the Wiese complaint, which the government had provided as an attachment to its motion to dismiss. *See Walburn*, 431 F.3d at 974. Likewise, to determine whether the first-to-file rule denied Poteet standing, the district court needed only to compare Poteet's complaint to the previously-filed Doe complaint, which also had been included as an attachment to the government's motion to dismiss. *See id.* at 971. As no discovery was needed to rule on the government's motion to dismiss, no evidentiary hearing was warranted.

Poteet attempts to avoid this conclusion by suggesting that she was entitled to an evidentiary hearing under 31 U.S.C. § 3730(c)(2)(A). However, in making this argument, Poteet fails to read this statutory provision in its proper context. Section 3730(c)(2)(A) applies only when the government has decided to "proceed[] with the action" and has assumed "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1). Once the government has taken over the case in this way, § 3730(c)(2)(A) provides that it "may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Such a hearing is required because, at that point in the litigation, it is clear that the relator has brought a jurisdictionally valid claim, has standing to pursue the claim, and is precluded from pursuing the claim only because the government has decided to intervene. This statutory requirement to provide a hearing does not, by its own terms, apply when the government does not yet have "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1). No statutory provision requires that a district court provide a relator with an evidentiary hearing when the government has filed a motion to dismiss the relator's claim for lack of jurisdiction. Moreover, no federal court has ever found that an evidentiary hearing is required for ruling on a motion to dismiss a *qui tam* action on the grounds that it is barred by the

FCA's first-to-file and public disclosure provisions. Accordingly, we conclude that the district court did not abuse its discretion by failing to conduct such a hearing.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Poteet's *qui tam* action is **AFFIRMED**.

Case 2:03ase0097-52628D-SΩAum Document 062153858207ed Filed 01/14/2009/1Page24 of 24e: PageID 828

## CONCURRING IN THE RESULT

McKEAGUE, Circuit Judge, concurring. I concur in the result reached by the majority and its analysis of Poteet's complaint under the public disclosure rule. However, I do not agree with the majority's further (and entirely unnecessary) discussion of the inapplicability of the first-to-file rule. Even assuming, for the sake of argument, that the first-to-file rule only bars subsequent complaints filed after a complaint that itself is not barred by the public disclosure rule, *United States ex rel. Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 825 (9th Cir. 2005), I do not believe that the record in this case provides a sufficient factual basis for concluding that Doe did not qualify as an "original source," 31 U.S.C. § 3730(e)(4)(B), and thus that the Doe complaint itself was barred by the public disclosure rule. Accordingly, I would affirm the district court's dismissal of Poteet's complaint on the basis of the public disclosure rule alone.